UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G.C. by and through his parent K.C., | Case No.: 2:24-cv-01838 |
| Plaintiffs, | |
| vs. | COMPLAINT AND PETITION FOR JUDICIAL REVIEW AND FOR RECOVERY OF ATTORNEY FEES AND COSTS |
| Everett Public Schools, | |
| Defendant. | |

Plaintiffs brings this action to appeal the Findings of Fact, Conclusions of Law, and Final Order ("Final Order") entered by Administrative Law Judge Pamela Meotti on August 13, 2024. This appeal is made pursuant to 20 U.S.C. § 1415(i)(2) and Wash. Admin. Code § 392-172A-05115.

## I.      PARTIES

1.1.      D.C. and K.C. ("Parents") reside with G.C. ("Student") and have resided at all times relevant to this action within the Everett School District's boundary lines in Everett, Washington, located in Snohomish County, Washington.  At the time of the underlying hearing as well as present day, K.C. had and has power of attorney for G.C.'s educational rights.  To

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

protect the privacy of G.C., only his initials are used. The true identities of Plaintiffs are known to the parties.

1.2.        Everett Public Schools (herein after "Defendant" or "the District") is a school district organized under the laws of the State of Washington and is located at 3900 Broadway Everett, WA 98201.

## II.        JURISDICTION AND VENUE

2.1.        This appeal of ALJ Meotti's Final Order arise under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §1400 et. seq.; 28 U.S.C. §§ 2201 and 2202; and the state Education for All Act ("State Act") Chapter 28A.13 RCW; and the regulations promulgated thereunder.

2.2.        Plaintiff's claims for attorney's fees arise under the IDEA, 20 U.S.C. § 1415(i)(3)(B).  This Court has jurisdiction pursuant to 20 U.S.C. § 1415 et al., 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1391(b).

2.3.        This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1342, 1343(a) and 20 U.S.C. § 1415(i)(2).

2.4.        All acts and omissions at issue occurred in the Western District of Washington. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## III.        FACTUAL ALLEGATIONS

3.1.        Student is a student with a disability under IDEA, 20 U.S.C. § 1401(3) and regulations promulgated pursuant to it at 34 C.F.R. 300 et seq. as well as Washington's implementing regulations, located at Chapter 392-172A et seq. of the Washington

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

Administrative Code. At all times relevant to this action, Student was eligible for special education and related services under IDEA.

3.2.    Following an evaluation at six years of age, Student was diagnosed with Autism Spectrum Disorder, Social Phobia, Separation, Anxiety, Attention Deficit Hyperactivity Disorder, and behavioral regulation problems.

3.3.    Student was found eligible for special education services in the disability category of Emotional/Behavioral Disability and received specially designed instruction ("SDI") through an individualized education plan ("IEP").

3.4.    Student was enrolled in a public school within the District through the end of eleventh grade school year, the 2021-2022 school year.  While enrolled with the District for high school, Student attended Jackson High School ("Jackson"). Throughout Student's time at Jackson, he struggled with severe anxiety, stress, self-harm, and emotional dysregulation.

3.5.    While Student experienced challenges in the educational setting throughout the time he attended at Jackson, his challenges and need for services and supports were heighted during the 2019-2020 and 2021-2022 school years.  During each of the respective school years, Student required hospitalization.  In the opinion of Dr. Cluff--who evaluated Student after his second hospitalization--had it not been for the school closures due to the Covid-19 pandemic, Student's immense challenges in the traditional school setting likely would have reared itself sooner.  The primary focus of the underlying action that gives rise to this Complaint is Student's immense needs for additional education support and services during the 2021-2022 school year that the District was clearly aware of but failed to take action that was reasonably calculated to meet Student's needs.

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

3.6.      During the first semester of the 2021-2022 school year, Student was failing several classes.  Student's teachers provided creative opportunities for Student to pass his courses, which included excusing numerous assignments, giving Student what one teacher described as a "young kid version" of the assignments and allowing Student to complete a single assignment to receive a passing grade.  Student was learning very little at Jackson and he knew it.  When testifying, he equated his high school education with the type of instruction that an elementary school student would receive.

3.7.      For her part, K.C. was in constant contact with Student's special education case manager.  K.C. also had frequent communication with Student's teachers.  K.C. shared with Student's case manager that Student's educational challenges stemmed from anxiety.  Despite being armed with knowledge that Student's challenges in the school setting were disability related, Student's IEP team took no meaningful action.

3.8.      Instead of calling an IEP team meeting to address Student's immense challenges in the school setting that gave rise to the Student's teachers' band-aid solutions during the fall semester of 2021--which focused on passing grades in lieu of learning--the same teachers advocated for the same approaches for the spring semester of 2022.

3.9.      In January 2022, Student's challenges in the school setting went from bad to worse.  Student's challenges in the academic setting were present throughout the entire semester.  Student's absenteeism from the school setting increased and he turned in even fewer assignments.

3.10.      Continuing with the District's band-aid approach to Student's education, one of Student's teacher's testified about Student's lack of success during the spring of 2022 in the

COMPLAINT AND PETITION FOR JUDICIAL REVIEW AND FOR RECOVERY OF
ATTORNEY FEES AND COSTS-
PAGE 4 OF 10

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

following way, "there are some students that they are so behind that it feels hopeless, and I have to give them some way of having hope. And so for the Student I have this assignment…it's unrealistic to ask a student to do an entire month's worth of assignments. So this kind of bails that student out…it is something he can do on a website that will take him about 30 minutes…"

3.11.    Bailouts and "having hope" notwithstanding, Student failed the course referenced in the foregoing paragraph during the spring semester of 2022.

3.12.    Student, in fact, largely stopped attending school--which was sanctioned by the District--during the spring semester of 2022 and also failed or did not receive credit for a number of courses he was enrolled in at the beginning of the semester.

3.13.    The District, in fact, took a triage approach to Student's education, and had him give up on courses that he was failing and so far behind in that there was no hope of catching up, so that he could focus on other courses that were more important in terms of how course credits applied towards Student meeting graduation requirements.

3.14.    Student's mental health declined throughout the 2021-2022 school year. Student was hospitalized in the middle of June 2022.

3.15.    On June 16, 2022, the District was provided with written notice of Parents' intent to unilaterally place Student at a residential treatment center due to Parents' belief that the District was denying Student a FAPE. The District rejected Parents' unilateral placement decision and convened an IEP meeting which was held on July1, 2022. The District made no amendments to Student's IEP.

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

3.16.    The written notice referenced by Parents in the foregoing paragraph was legally sufficient.

3.17.    The District offered to reevaluate Student over the summer before they declined to do so.

3.18.    Throughout the summer and fall of 2022, student was placed in treatment programs in Utah including Triumph Youth Services, Highland Ridge Hospital, and Provo Canyon.

3.19.    On November 7, 2022, based upon G.C.'s provider's recommendations, Student was transferred to SPARK Academy, a Nonpublic Agency School for the State of Washington.

3.20.    SPARK Academy was a proper placement for Student.

3.21.    In November 2022, while attending SPARK Academy, Student underwent a comprehensive neuropsychological evaluation by Dr. Cluff after the District was unwilling to evaluate Student without Student returning to Washington. Based upon the evaluation, Dr. Cuff recommended that Student "continue treatment in a clinically, sophisticated, highly structured, and supervised residential treatment program...".  Furthermore, Dr. Cluff testified that Student could not have accessed his education during the 2022-2023 without the kind of care offered by a residential treatment center.

3.22.    During the Spring of 2023, the District initiated a reevaluation process.  The District could not evaluate Student in his placement in Utah before Dr. Cluff evaluated Student, but the District could evaluate Student in his placement in Utah after Dr. Cluff evaluated Student.  Following the District's evaluation, the District again declined to offer placement at a residential treatment center instead of offering inappropriate placement and services.

COMPLAINT AND PETITION FOR JUDICIAL REVIEW AND FOR RECOVERY OF
ATTORNEY FEES AND COSTS-
PAGE 6 OF 10

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

3.23.    Plaintiff initiated an administrative due process hearing regarding the provision of special education services to G.C., which was assigned Office of the Superintendent of Public Instruction Cause No. 2023-SE-0107 and Office of Administrative Hearings Docket No. 06-2023-OSPI-01930. An administrative hearing was held before Administrative Law Judge Pamela Meotti on April 23-26 and May 7, 10, and 21, 2024. The primary issues in the hearing were whether the District violated the IDEA by failing to provide G.C. a free appropriate public education ("FAPE") under the IDEA, whether G.C.'s unilateral placement by Parents at out-of-state residential treatment centers was appropriate and reasonably calculated to meet Student's needs, and whether Plaintiff was entitled to their requested relief.

3.24.    On Tuesday, August 13, 2024, ALJ Meotti issued the Final Order, a copy of which is appended hereto. Among ALJ Meotti's numerous errors, the Final Order included factual findings that are not supported by the administrative record and legal conclusions that are not supported due to ALJ Meotti's errant legal analysis and misapplication of fact to law.

3.25.    The IDEA provides an appeal of the ALJ Decision as a matter of right. Specifically, 20 U.S.C. § 1415(i)(2)(A) states:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

3.26.    This right to appeal also is set forth in the Washington Administrative Code at Wash. Admin. Code § 392-172A-05115(1), which states:

> Any party aggrieved by the findings and decision made under WAC 392-172A-05105 through 392-172A-05110 or 392-172A-05165 has the right to bring a civil action with

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

respect to the due process hearing request. The action may be brought in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

3.27.    The Plaintiffs brings this appeal pursuant to the above-stated provisions.

3.28.    If Plaintiffs' appeal is successful, Plaintiff will be entitled to attorney's fees and costs for the matter that gives rise to this appeal as well as the appeal. Accordingly, pursuant to 20 U.S.C. § 1415(i)(3)(B), Plaintiffs requests the Defendant be ordered to reimburse Plaintiffs for all attorney's fees and costs accrued to date in the future as it relates to the underlying action that gives rise to this appeal and any matters related to this appeal.

## IV.    CAUSES OF ACTION

### A. Appeal of Administrative Order Under IDEA.

4.1.    The factual allegations set forth in the above paragraphs are incorporated by reference

4.2.    Pursuant to the IDEA and Washington State's special education laws, the Defendant denied G.C. a FAPE and committed multiple violations of IDEA that resulted in a denial of FAPE to G.C. during the 2020-2021, 2021-2022, and 2022-2023 school years. Moreover, the District's reevaluation of Student was not appropriate.

4.3.    ALJ Meotti's Final Order found that the District did not deny Student a FAPE and did not violate the IDEA during the time period at issue. ALJ Meotti made several factual findings that are unsupported by the record and legal conclusions that are unsuported by law.

4.4.    The Plaintiff is aggrieved by ALJ Meotti's Final Order and is entitled to appeal that decision.

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

4.5.     If Parents prevails on any of the issues raised in the underlying case addressed herein, Parents are entitled to reasonable attorney fees and costs as the prevailing party.

**B. Request for Reasonable Attorney Fee and Costs Under the IDEA.**

4.6.     The factual allegations set forth in the above paragraphs are incorporated by reference.

4.7.     If Plaintiff prevails on their appeal, they are entitled to attorneys' fees and costs for the underlying action that gives rise to this appeal, the appeal, and all other related matters.

4.8.     Plaintiff are entitled to reasonable attorney fees and costs related to this action.

## V.     REQUEST FOR RELIEF

Plaintiff requests that the Court enter an order:

5.1.     Reversing the erroneous findings and conclusions in ALJ Meotti's Final order.

5.2.     Declaratory ruling that Adult Student through K.C. is the prevailing party in the underlying action and their appeal.

5.3.     Enter a declaratory judgement that the Defendant denied G.C. a free appropriate public education under the IDEA and state law.

5.4.     Grant Plaintiffs request for compensatory education for tuition, related costs, and other services paid for by Plaintiffs.

5.5.     Grant Plaintiffs request for reimbursement for the placement at all residential treatment centers attended by the Student, including insurance copays, related costs, and interest unless specifically not requested.

5.6.     Grant Plaintiffs' request for other specific relief requested in the underlying complaint and amended complaint and issues, including that the District provide training through

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

the Office of the Superintendent of Public Instruction (OSPI) to all District staff for every violation of the IDEA.

5.7.    Award Plaintiffs with their costs and reasonable attorney fees as the prevailing party in the due process hearing and any additional fees incurred in this action to enforce their rights to a fee award pursuant to 20 USC § 1415(i)(3)(B).

5.8.    Plaintiffs pray for such other equitable or legal relief as the Court deems just.

DATED this 7th day of November, 2024.

By: _____
Ryan P. Ford, WSBA No. 50628

By: _____
Luke Hackenberg, WSBA No. 58748

CEDAR LAW PLLC
113 Cherry St., PMB 96563
Seattle, WA 98104
Tel (206) 607-8277
Fax (206) 237-9101
ryan@cedarlawpllc.com
luke@cedarlawpllc.com
Attorneys for Plaintiff

COMPLAINT AND PETITION FOR JUDICIAL REVIEW AND FOR RECOVERY OF
ATTORNEY FEES AND COSTS-
PAGE 10 OF 10

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104-2205
206.607.8277 (tel)
206.237.9101 (fax)

**WASHINGTON STATE**
**OFFICE OF ADMINISTRATIVE HEARINGS**

| In the matter of: | Docket No.   06-2023-OSPI-01930 |
|---|---|
| Everett School District | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER** |
| | Agency:      Office of Superintendent of Public Instruction |
| | Program:     Special Education |
| | Cause No.    2023-SE-0107 |

A due process hearing was held before Administrative Law Judge (ALJ) Pamela Meotti on April 23 to 26, and May 7, 10, and 21, 2024, via videoconference. The Parent of the Adult Student whose education is at issue[1] appeared and was represented by Ryan Ford and Luke Hackenberg, attorneys at law.[2] The Everett School District (District) was represented by Susan Winkelman, attorney at law. Also present for the District was Kelley Clevenger, Executive Director of Special Services.

<u>STATEMENT OF THE CASE</u>

**Procedural History**

On June 26, 2023, the Parent filed a Due Process Hearing Request (Complaint). The matter was assigned to ALJ Pamela Meotti. The District filed a response on July 6, 2023. An amended Complaint was filed on August 4, 2023.

The due process hearing was set for November 13 to 16, 2023, then continued to April 23 to 26, 2024, at the Parent's request.

Prehearing orders were issued: July 24, 2023, August 16, 2023, November 1, 2023, April 1, 2024, April 9, 2024, April 29, 2024, and May 13, 2024.

---

[1] To ensure confidentiality, names of parents and students are not used.

[2] The Adult Student's Mother, referred to as "Parent," has durable power of attorney for educational decisions. The Adult Student testified on May 10, 2024, but did not otherwise appear at the hearing.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 1

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

**Due Date for Written Decision**

The deadline for a written decision in this matter was extended at the District's request to thirty (30) days after the record of the hearing closes. The record of the hearing closed on July 16, 2024, at 5:00 p.m., when the parties timely submitted post-hearing briefs. The due date for a written decision is August 15, 2024.

<u>EVIDENCE RELIED UPON</u>

**Exhibits Admitted:**

Joint Exhibits: J1

District's Exhibits: D1-29, D32-D38

Parent's Exhibits: P2-P10, P14-P15, P17-P28, P31, P33-P39

P11 pp2-7, 23-30, 33-39, 41-64, 66-67, 74-76, 79-85, 91-92, 97-99, 102-112, 114-120, 127-131, 134-150, 156-157, 225-226, 232-265
P12pp34-41, 44, 48-52, 59
P13 pp1-4, 18-23
P16 pp1-17, 29-30, 49-80, 93-136, 141-170, 195-198
P29 pp1-29, 31-50, 55-64, 76-82, 88-95, 113-116, 147-148, 168-170, 173, 176-186, 212-213, 263-264, 266-270, 280-281, 302-306.
P30 except p5
P32 pp5, 7, 9-62

**Witnesses Heard (in order of appearance):**

Sherman Iversen, District general education teacher
Rose Gifford, District general education teacher
Gregory Poe, District general education teacher
Judy-Gail Baker, District general education teacher
David Moss, Therapist, The Heritage Community
Dr. Joshua Cluff, Clinical Psychologist, Clearview Psychological Service
Susan Walker, District special education teacher
George Ballew, Executive Director Spark Academy
The Parent
Sara Burdick, District counselor
Matty Bryant, Academic Director Spark Academy
Andrea Gackle, District special education teacher
Bethany Stoddard, District assistant principal
Robin Arnold, District school psychologist

Findings of Fact, Conclusions of Law, and Final Order
Cause No. 2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 2

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA 98504-2489
(800) 845-8830
(206) 587-5135

Virginia Alonzo, District school psychologist
Brenda Felder, District success coordinator
Cathy Fisher, District paraeducator
The Student

## ISSUES

As set forth in the amended complaint, the issues for the due process hearing are:

i.  Whether the District violated the Individuals with Disabilities Education Act (IDEA) and denied the Student a free appropriate public education (FAPE) by:

   a.  From June 26, 2021 through July 1, 2022, failing to implement the Student's March 2021 Individualized Education Program (IEP) and March 2022 IEP by failing to deliver the specially designed instruction (SDI) as written in light of the Student's excessive disability-related absences and inability to access his FAPE;

   b.  Failing to develop programming reasonably calculated to mitigate the Student's excessive disability-related absences between June 26, 2021 and July 1, 2022, when the Parent unilaterally placed the Student in an out-of-state therapeutic program pursuant to reimbursement notice;

   c.  Failing to draft IEPs reasonably calculated to offer the Student programming and placement in an appropriately therapeutic setting between June 26, 2021 and July 1, 2022, when the Parent unilaterally placed the Student in an out-of-state therapeutic program pursuant to reimbursement notice; and

ii.  Whether the Student's unilateral placement by the Parent at each of the following out-of-state residential treatment centers was appropriate and reasonably calculated to meet the Student's needs:

   a.  Triumph Youth Academy (July 2022 through August 2022)

   b.  Provo Canyon (August 2022 through September 2022)

   c.  Heritage Spark (September 2022 through the present)

iii.  And, whether the Parent is entitled to her requested remedies:

   a.  Declaratory relief that the District violated the IDEA and denied the Student a FAPE;

Findings of Fact, Conclusions of Law, and Final Order
Cause No. 2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 3

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA 98504-2489
(800) 845-8830
(206) 587-5135

    b.   Reimbursement to the Parent for the Student's placements at all residential treatment centers attended by the Student, including insurance copays, related costs, and interest;

    c.   Compensatory education to allow the Student to obtain the educational benefit that he would have received but for the District's violations of the IDEA;

    d.   An order that the District provide training through the Office of the Superintendent of Public Instruction (OSPI) to all District staff for every violation of the IDEA;

    e.   Or other equitable remedies, as appropriate.[3]

<u>**FINDINGS OF FACT**</u>

In making these findings of fact, the logical consistency, persuasiveness, and plausibility of the evidence has been considered and weighed. To the extent a finding of fact adopts one version of a matter on which the evidence is in conflict, the evidence adopted has been determined more credible than the conflicting evidence. A more detailed analysis of credibility and weight of the evidence may be discussed regarding specific facts at issue.

**Background**

1.    The Adult Student is currently 18 years old. He first qualified for special education services in the area of social/emotional/behavioral needs when he was in sixth grade, in 2017. P2p4. The Student had been diagnosed with autism spectrum disorder (ASD), social phobia, separation anxiety disorder, and attention deficit /hyperactivity disorder (ADHD). P2pp2-3.

2.    The Student was reevaluated in March 2020, when he was in ninth grade at Henry M. Jackson High School (Jackson) in the Everett School District (District). P2p1. The Student remained eligible for special education services in the disability category of emotional/behavioral disability. P2p8. The team recommended specially designed

---

[3] The Parent seeks declaratory relief that the District acted with deliberate indifference and violated Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and 42 U.S.C. § 1983. She also seeks to preserve the right to seek attorney's fees and costs. Because the ALJ lacks jurisdiction over these claims, and cannot award such relief, these proposed remedies are not included in the issue statement.

Findings of Fact, Conclusions of Law, and Final Order       Office of Administrative Hearings
Cause No.  2023-SE-0107       P.O. Box 42489
Docket No. 06-2023-OSPI-01930       Olympia, WA  98504-2489
8612 - OSPI       (800) 845-8830
Page 4       (206) 587-5135

instruction (SDI) in social/emotional/behavioral and math, along with a behavior improvement plan (BIP). P2p9.

**March 2021 IEP and BIP**

3.      On March 17, 2021, when the Student was in tenth grade, his individualized education program (IEP) team met to develop an annual IEP. D2p1.

4.      At that time, the Student had been participating in school remotely due to the COVID-19 pandemic. The Parent discussed at the meeting that "being away from the school environment and friends from last year has been very good for him." D2p21; P38p6.

5.      The team developed an IEP that provided multiple accommodations. Among these were shortened assignments, extra time on tests/quizzes, use of oral responses to assignments and tests, additional time to retrieve oral and written responses, breaking down larger projects into smaller chunks with deadlines for each, private presentations to the teacher, and modified grading. D2p10.

6.      The IEP provided the following special education and related services:

| Special Education *(specially designed instruction):* | | | | | |
|---|---|---|---|---|---|
| Behavior/Social Skills ✓ | 03/17/2021 | 275 minutes per week | Special Education/SDI | 03/16/2022 | Special Education Teacher |
| Math ✓ | 03/17/2021 | 275 minutes per week | Special Education/SDI | 03/16/2022 | Special Education Teacher |
| **Related Services** *(i.e. - speech, motor, counseling, vision/hearing, transportation, interpreting services, orientation/mobility, parent training, etc):* | | | | | |
| Shared Para Support | 03/17/2021 | 550 minutes per week | Special Education/Related Services | 03/16/2022 | Shared Para educator |
| Shared Para Support | 03/17/2021 | 1,350 minutes per week | General Education | 03/16/2022 | Shared Para educator |
| Total time in Special Education: (Minutes per Week): 550 | | | | | |
| **Supplementary Aids and Services** *(allows student to be educated with non-disabled peers to the maximum extent in general education or other educational setting):* | | | | | |
| Shared para support | | | | | |
| **Program Modifications or Support for School Personnel** *(i.e. - staff development/training, technical assistance, etc.):* | | | | | |
| Follow FBA and BIP Right Response Training | | | | | |

D2p11. The IEP provided the Student would spend 68.57%of his time in the general education setting. D2p12.

7.      On March 17, 2021, the IEP team also reviewed the Student's BIP. D2pp15, 21. The Parent discussed that some of the behaviors identified in the BIP were not

occurring at the time of the meeting. The team determined that it would review the BIP after in-person learning resumed and amend as necessary. D2p21.

8.      There is no evidence that any members of the IEP team raised concerns about the March 2021 IEP or BIP. D2p13, 21.

**2021-2022 School Year – 11th Grade**

9.      During the 2021-2022 school year, the Student was in eleventh grade at Jackson. He was in the Achieve program, which is the District's behavior program. T644. Susan Walker was the Student's special education teacher and case manager.[4] D7p1. Andrea Gackle co-taught the Achieve program, sometimes called social skills class, with Ms. Walker.[5] T631.

10.     Cathy Fisher was a paraeducator for the Achieve program.[6] T375. She worked with the Student starting in ninth grade. Because she had a good relationship with the Student, she was often assigned to work with him. T612, 926. Ms. Walker oversaw Ms. Fisher's work with the Student. T927. Students in the Achieve program also received behavioral and/or academic support from a paraeducator in general education classes. T644.

11.     In early September, the Student was accepted into the Sno-Isle Diesel Power Technology Program (Sno-Isle), which was administered by the Mukilteo School District and prepared students for entry level positions working with Diesel powered engines. D31pp1,5; T657. The Student was interested in diesel power technology and trucks and was excited about his acceptance into this program. T866, 1087, 1137.

12.     Following his admission into Sno-Isle, the Student's schedule was adjusted as follows:

Periods 1-3: Sno-Isle Program
Period 4: Engineer Your World (also referred to as engineering class)
Period 5: English
Period 6: Social Skills SDI (also referred to as Achieve or Ms. Walker's class)

---

[4] Ms. Walker has a bachelor's degree and is a certificated special education teacher. T361. She has been a special education teacher at Jackson for six years. Prior to becoming a special education teacher, she was a paraeducator. T361.

[5] Ms. Gackle has a bachelor's degree in special education and is a certificated special education teacher. T629, 642. She has been teaching since 2009, and has been employed at Jackson since 2019. T629.

[6] Ms. Fisher has an associate's equivalency degree and has worked in the Achieve Program at Jackson for 20 years. T925.

Online U.S. History.

D3p1; T1140. Under this revised schedule, the Student's math SDI minutes were "embedded as needed in the engineering class as well as during the social skills class." D3p1; P12p59.

13.    Sherman Iversen taught the Student's general education online U.S. history class.[7] D34p3; T46, 53. Judy-Gail Baker taught the Student's general education English class.[8] D34p3; T110.

14.    Gregory Poe taught the Student's general education engineering class for part of the 2021-2022 school year.[9] T79; P11p135. Mr. Poe was on paternity leave from mid-October 2021 through the end of the first semester. T79. He was on leave for a second time, from the end of April 2022 through the end of the 2021-2022 school year. T80. Kylie Branson served as a substitute teacher during the first leave period; Fady Masoud served as a substitute teacher during the second leave period. T80.

15.    The Student received support from a paraeducator during his engineering class. T844. There is no further evidence in the record regarding who provided paraeducator support in the engineering class or the nature of that support.

16.    When the Student attended sixth period, he received SDI in social skills and math and sometimes received help with his U.S. history course. T441.

17.    By email on December 2, 2021, the Parent informed Ms. Branson and Ms. Walker that she was concerned that the Student had a failing grade and missing assignments in engineering. P11p136. Ms. Branson responded that she had spoken with the Student about a plan to complete his engineering work. P11p136. The Student needed to turn in his final portfolio, but would be excused from additional

---

[7] Mr. Iversen has a bachelor's degree in geography and a master's degree. T29-30. He previously taught social studies and history classes at several school districts in Washington state, and has taught online classes for the District since 2005. T32.

[8] Dr. Baker has a bachelor's degree in international studies and comparative literature, a master's degree in near eastern languages and civilization, and a PhD in English and critical applied linguistics. She obtained her teaching credentials in 2000, has been national board-certified since 2006, and has endorsements in English, social studies, and history. Dr. Baker has been teaching at Jackson since 2000. T109.

[9] Mr. Poe has a bachelor's degree in physics, a master's degree in physics education, and national board certification in teaching physics. T73. He has taught physics and engineering at Jackson for approximately eight years. T74.

[9] Mr. Iversen has a bachelor's degree in geography and a master's degree. T29-30. He has taught social studies and history classes at several school districts in Washington state, and has taught online classes for the District since 2005. T32.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 7

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

assignments. He could contact Ms. Branson if he needed credentials to access a program used in the class, called Fusion360. P11p136. Ms. Branson also offered the Student the option of using a program called TinkerCad instead of Fusion360. P11p135. When a student missed engineering classes, make-up assignments sometimes used TinkerCad, which is simpler and easier to use than Fusion360. T82.

18.    Ms. Walker raised the option of having the Student partner with another student for help in engineering class, but he was not interested. P11p135.

19.    By email on December 2, 2021, the Parent also raised concerns about the Student's English grade with Dr. Baker. In response, Dr. Baker discussed a plan she had made with the Student to help him to complete his work. P11p140-49. The Parent was concerned that assignments focused on abstract concepts would be difficult for the Student. P11p134. As a result, Dr. Baker encouraged the Student to focus on something he did well at Sno-Isle related to his interest in trucks and engines. T115.

20.    Throughout the 2021-2022 school year, the Parent frequently communicated with teachers and staff regarding the Student. T520; 873. Additionally, Dr. Baker frequently communicated with Ms. Walker and the Parent about how the Student was doing in order to keep him on track to graduate. T111, 146-47. Dr. Baker also made efforts to get to know the Student and his interests to support him in completing his work. T137-40.

### January 2022

21.    On January 5, 2022, the Student started working at a job in Issaquah from 2:00 p.m. to 5:00 p.m. each weekday. D3p1; P16pp6, 9. The Student was excited about the job, so teachers and staff did their best to support him. T377. In order to attend work, the Student needed to leave school after fifth period; he therefore missed his sixth period social skills class and SDI. P16pp6, 10.

22.    By email on January 10, 2022, the Parent asked Ms. Walker to help improve the Student's grades in English, history, and engineering because the family could get an insurance discount if the Student obtained a B average. P11p23. Ms. Walker offered to work with the Student during sixth period after classwork was completed. P11p24. Ms. Fisher was also available to work with the Student. P11p37.

23.    The Parent also emailed the Student's general education teachers about improving the Student's grades. She asked Mr. Iversen: "Is there any way [the Student] can get his grade up to a B by the end of this semester? What would he need to do?" P11p25. Mr. Iversen allowed all students to complete any missed work for credit with little or no deduction for late work. P11pp28. He explained to the Parent that the

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 8

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

Student could still obtain a B and the steps he would need to take to achieve that grade. P11p29. By January 13, the Student had made up most of the work that was missing. P11p34.

24.     The Parent also contacted Dr. Baker because she was "frustrated" by the Student's grade and wanted him to qualify for an insurance discount. P11p26-p27. Dr. Baker informed the Parent that the Student's work could be narrowed down to a single summative assignment, which would likely result in a C. "Summative" assessments are assignments that are graded based on performance. "Formative" assessments are for practice, but teachers may give credit for effort. T113-14. Dr. Baker did not see this as "forgiving" work, but as narrowing assignments to the essential standards, consistent with the accommodations in his IEP. T122.

25.     On January 12, 2022, the Student's IEP team met to discuss the impact of his job on his ability to meet graduation requirements. D3p1. The team offered the Student the opportunity to work with a dedicated staff member from 7:00 a.m. to 7:30 a.m. Monday through Friday. D3p2; T435. The Parent discussed that earning credits to graduate was a priority, and that the Student benefited from support from staff to complete his schoolwork. D3p1.

26.     The Student attended early morning sessions infrequently, if at all. T436, 846.

27.     On January 12, 2022, the Student's work start-time changed to 3:00 p.m. This enabled him to leave school at 2:00 p.m., shortly before the Student's sixth period social skills class ended at 2:05 p.m. P16pp1-3. P39p1.

28.     By email on January 14, 2022, Ms. Walker notified the Parent about an incident in the Student's fourth period engineering class (January 14 incident). Five minutes before the end of class, the Student packed up his belongings and stood by the door. When the substitute teacher asked him to sit down, he flipped her off and walked out. D4p1. During sixth period, Ms. Walker asked the Student if he would be willing to apologize but he said he would not and left. D4p1. The Student later wrote an apology, but was angry with Ms. Walker because he believed she said something about the incident in front of people. T904; D4p4; P11pp6-7. Ms. Walker did not believe others were present but apologized to both the Parent and the Student. P11p7; T372. The Student wrote to the District Superintendent indicating his intent to file a complaint because he believed a teacher had violated his first amendment rights by indicating he would be disciplined if he failed to apologize. D4p4.

29.     After the January 14 incident, the Student stopped attending his engineering class because he "had a problem with the sub." The Parent was aware that the Student was not attending this class. P11p41.

30.    The Student's attendance records for the 2021-2022 school year kept track of his attendance each period by using codes including: NC – No Contact; PC – Parent Contact; IL – Illness; ZE -Quarantine or Directed Medical Absence; SR – School Related; TVE – Travel or Vacation. P32pp55-62. "NC" meant the Parent did not contact the District regarding the Student's absence. T801.

31.    Between September and December 2021, absences were reported for the Student as follows:

--"illness" or "quarantine" absences were reported for all classes on five days;
--"no contact" absences were reported for one or more classes on five days;
--"Parent contact" absences were reported for one or more classes on seven days.

P32pp55-56.

32.    During January 2022, the Student missed classes due to his job and his decision not to attend fourth period after the January 14 incident. "No contact" absences were reported for one or more classes on nine days and "parent contact" absences were reported for one or more classes on four days. P32p56.

33.    Ms. Gackle, Ms. Walker, and Ms. Fisher discussed how to motivate the Student to attend his engineering class. T639. They tried to encourage him to come to school through communications with the family, emails with the Student, and by providing support at school to help the Student to succeed in his classes so that he could meet his goal of graduating. T640-41, 651, 656, 876-77. Additionally, Dr. Baker tried to engage the Student in the material and to encourage him to attend other classes in addition to hers. T138-40, 144-45.

34.    By email on January 13, 2022, Mr. Iversen informed the Parent the Student had completed most of his work, with potential to improve his grade significantly by completing the few missing items. P11p33. Dr

35.    Ultimately, the Student successfully improved his grades in all of his classes. During the first semester of the 2021-2022 school year, which ended on January 28, 2022, the Student achieved an "A" in three classes (engineering, social skills, diesel power technology), an "A-" in English, and a "B" in U.S. history. D22p3; D34p3; P16p196.

### Second Semester of 2021-2022 School Year

36.    On February 10, 2022, Ms. Walker sent the Parent the Student's progress reports toward his IEP goals. P14p1. The Student was making slow progress toward

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 10

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

his goal related to solving algebraic equations but had not progressed toward his goal related to solving a problem using the Pythagorean theorem. P14p2. The Student was making slow progress toward his behavior goals regarding situations that evoked heightened and uncomfortable emotions. A comment dated January 31, 2022, noted that the Student was unable to fully participate for a portion of the reporting period due to his employment, and that his employment opportunity seemed to improve his self-esteem. A comment dated November 15, 2021, noted that the student appeared calm and appeared to have a more positive outlook and to be more confident since entering the Sno-Isle Program. P14p3.

37.    On Monday, February 14, 2022, the Parent notified the Student's teachers that he was traveling to Michigan for the week. P11pp41-42. Mr. Poe, who had returned to teaching on February 1, 2022, responded that the Student had only attended his fourth period class once in the previous two weeks. P11p41.

38.    The Parent told Mr. Poe that the Student would start attending class again. However, the Student did not do so, prompting further email discussions between Mr. Poe, Ms. Walker, and the Parent on February 23 and 24, 2022. P11pp41, 43-44. Mr. Poe thought the Student might be avoiding class because he had a lot of late work and offered to help the Student when he returned to class. P11p47. Ms. Walker advised that the Student had worked in the Achieve classroom during fourth period on February 24, 2022. P11p48.

39.    During February 2022, the Student missed five days of school due to travel or vacation. P32p57; J1p2. "Parent contact" absences were reported for one or more classes on four days. "No contact" absences were reported for one or more classes on four days. P32p57.

40.    In early March, the Student lost his job. T529. He was having difficulty "balancing life and work and being reliable and on time." T1102. He also wanted to go out with friends and would make up an excuse to leave work early to hang out with friends. *Id.*

41.    On March 1, 2022, the Parent notified Mr. Poe and Ms. Walker that she had asked the Student to work out a way to attend fourth period in the Achieve classroom. P11p49. Ms. Walker responded that the Student had contacted her about working in her classroom, and had done so on at least one occasion. P11p50. The Student did not contact Mr. Poe, however, who advised the Parent he had seen the Student only once in the past four weeks. P11p52.

42.    The Student was scheduled to meet with his school counselor, Sara Burdick, on March 3, 2022.[10] P16pp50. As a school counselor, Ms. Burdick supports students with classes and scheduling, graduation and post-high school plans, and social-emotional well-being. T534. Ms. Burdick checked in with the Student and tried to get to know him as a person—his interests and future plans—in order to encourage him to come to school. T543, 48.

43.    The Student did not attend the meeting with Ms. Burdick on March 3, 2022. The meeting was rescheduled and occurred on March 16, 2022. P16pp53, 56, 65.

44.    On March 17, 2022, the Student was scheduled to meet with Ms. Burdick to further discuss his schedule, but he did not attend. P16p72.

### March 2022 IEP Meeting

45.    On March 15, 2022, the Student's IEP team met to discuss his annual IEP and BIP. D7p1. Meeting participants included the Parent, the Student, Mr. Poe, a District administrator, Ms. Gackle, and Ms. Walker. D7p26.

46.    The team discussed the Student's present levels of performance. The Student worked well with staff members he was comfortable with and would accept help from preferred staff. He could be highly motivated when he was interested in something. He answered questions from staff during daily check-ins and had "really come a long way in developing his sense of self and taking pride in who he is." D7p4.

47.    The team also discussed that the Student was successfully working in the Sno-Isle program. D7p6. Although the Parent testified at hearing that the Student was struggling to attend Sno-Isle as early as October 2021, there is no evidence that the Parent or anyone else raised concerns about Sno-Isle attendance during the March 2022 IEP meeting. T522, 1088.

48.    The team developed annual goals in the area of social/emotional focused on improving the Student's ability to engage in conversation with a classmate and to increase behaviors such as working in an approved location and actively working on an assignment. D7p5. The Student's math goal focused on improving his ability to solve real world story problems involving algebraic equations from 30% to 80%. D7p6.

---

[10] Ms. Burdick has a master's degree in educational psychology and has been a school counselor for 11 years. She worked at Jackson as a school counselor from 2019 through 2022. T533.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 12

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

49.    The team also discussed that the Student was interested in attending a program that would allow him to be employed in the field of diesel power technology after graduation. D7p3.

50.    The IEP provided multiple accommodations and modifications. Among these were shortened assignments, extra credit options, individualized/small group instruction, dictation to a scribe, extra time on tests/quizzes, use of oral responses to assignments and tests, additional time to retrieve oral and written responses, breaking down larger projects into smaller chunks with deadlines for each, private presentations to the teacher, and modified grading. D7p9-10.

51.    The IEP provided the following SDI and related services:

| Special Education *(specially designed instruction)*: | | | | | |
|---|---|---|---|---|---|
| **Service** | **Initiation Date** | **Frequency** *(e.g. minutes per week)* | **Location** *(setting)* | **Duration** *(End Date)* | **Staff Responsible for Delivering Service** |
| Behavior/Social Skills | 03/15/2022 | 138 Minutes per Week | Special Education | 03/14/2023 | Special Education Classroom Teacher |
| Math | 03/15/2022 | 137 Minutes per Week | Special Education | 03/14/2023 | Special Education Classroom Teacher |

| Related Services *(i.e. – speech, motor, counseling, vision/hearing, transportation, interpreting services, orientation/mobility, parent training, etc.)*: | | | | | |
|---|---|---|---|---|---|
| **Service** | **Initiation Date** | **Frequency** *(e.g. minutes per week)* | **Location** *(setting)* | **Duration** *(End Date)* | **Staff Responsible for Delivering Service** |
| Shared Para Support | 03/15/2022 | 275 Minutes per Week | Special Education/Related Services | 03/14/2023 | Special Education Paraprofessional |
| Shared Para Support | 03/15/2022 | 1625 Minutes per Week | General Education/Related Services | 03/14/2023 | Special Education Paraprofessional |

D7p12.

52.    The IEP reflected that the Student had earned 16.50 of 24.00 credits required to graduate. D7p16.

53.    At the IEP team meeting, the team discussed the Student's anxiety around attending his fourth period engineering class. The Student was worried about his peers' perception of him because he was so far behind in his work. T659-60. Accordingly, the team developed a plan to help the Student catch up with his work. The team agreed that Mr. Poe would provide assignments that the Student would work on in the Achieve classroom, with the hope that he would feel comfortable returning to class when he was caught up. P15p4; T448, 855. The plan provided that Ms. Fischer

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 13

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

would work with the Student; the Parent was happy he would be receiving her help. T1140-41.

54.    The IEP team also developed a BIP, which targeted non-compliance or avoidance, such as avoiding a task, an assignment, or a class. The BIP also targeted behaviors related to anxiety. D7p17; T853-54. Although the BIP referred to "passive/aggression with teacher and/or peers," Ms. Walker did not see the Student engage in that behavior in her classroom. T853.

55.    There is no evidence in the record that anyone expressed disagreement with the IEP or with the BIP during the March 15, 2022 IEP meeting. T649, 876, 985, 988.

56.    Following the IEP team meeting, Dr. Baker sent the Parent a packet of the work that the Student was missing in English. P11p61-64. In Dr. Baker's class, the Student had great rapport with a student teacher and was more engaged when she was present. Dr. Baker had the student teacher take over check-ins with the Student, hoping that this would help the Student feel he had someone on his side. T120, T132. Dr. Baker and Ms. Walker also discussed plans to help the Student pass her class and whether scribing or dictation could be helpful to the Student. T120-21; P9p1. Because the Student was attending and engaged in Dr. Baker's class, she made efforts to get him to attend his other classes, although these efforts were not successful. T144-45.

57.    On March 15, 2022, Mr. Poe sent Ms. Walker a make-up assignment for the Student.[11] P11pp66-67; T88. By March 23, 2022, the Student had completed the make-up assignment; Mr. Poe thanked him for doing so. On March 24, 2022, the Student responded that he would like another make-up assignment, which Mr. Poe sent that day. P11p74. The Student also could have chosen to complete his original assignments, which were available online at any time. T89. It is unclear whether the Student completed the second make-up assignment.

58.    During March 2022, the Student's absences increased significantly. The Student continued to have a significant number of absences throughout the remaining months of the 2021-2022 school year. P32pp57-61.

59.    By the end of March 2022, the Student was failing three classes and his attendance at Sno-Isle was "touch and go." P16pp78, 79. The Student's Sno-Isle

---

[11] Mr. Poe had a folder of makeup assignments for all students in his classes. They were designed for any student who had no prior knowledge and could be completed in thirty minutes. T77-78, 87-88, 94. The purpose of the makeup assignment was to demonstrate understanding. T88.

teacher encouraged him to attend, tried to build his confidence, and teamed the Student with a student he liked hoping that would help with attendance. T523.

60.    Brenda Felder, a graduation success coordinator for the District, discussed the Student's attendance and grades with Jennifer Linder, also a District graduation success coordinator, and Ms. Burdick, the Student's counselor.[12] P16p79; T550. The group recommended to the Parent that the Student focus on improving his grades in the classes he was failing before focusing on making up missed credits, also referred to as credit recovery. Ms. Felder offered to meet with the Student that day. P16pp79-80. The Parent responded that the Student was working on his grades and that she would inform Ms. Felder when he was caught up. P16p80.

61.    Bethany Stoddard, an assistant principal at Jackson, also was involved in meetings to discuss the Student's attendance during the 2021-2022 school year. T711. The school team was working with the Parent to get her perspective on why the Student wasn't coming to school and was trying to figure out a way to get the Student to school so that he could graduate. T711-12. The team reached out the Student, tried to find things that motivated him, did its best to make Ms. Fisher available since he liked working with her, and considered scheduling changes. T713-14.

62.    Although the District has an employee who can visit a student's home regarding attendance issues, a home visit typically occurs when the District is unable to contact anyone in the family. T717. The District did not pursue that option in this case because there was frequent contact with the family and no one suggested that home visits would have been helpful. T717.

**April 2022**

63.    The Student's third quarter progress report showed that as of April 13, 2022, he was failing three classes (U.S. history, English, engineering) and had an A in social skills. P16p197.

64.    By email to the Parent on April 27, 2022, Ms. Felder noted that the Student's "current grades are suffering" and again asked how she could support the Student. P16p99. The Parent asked for information regarding summer classes, which Ms. Felder provided. P16p99.

---

[12] Success coordinators worked with the counseling office on students' plans for graduation. They worked very closely with students who were struggling in order to help them meet graduation requirements. T550.

65.     On April 27, 2022, the Parent also informed Ms. Burdick, Ms. Walker, and Ms. Felder that she was having a difficult time getting the Student to attend class in person. The Parent noted that the Student did not want to go to Jackson, but did want to graduate and wanted to do "online school." P16p106. Ms. Felder provided information regarding various graduation options. P16pp111-115. Ms. Walker set up a meeting to discuss the Student's options. P16p131; T1147.

66.     Around this time, the Parent suggested to Ms. Walker that the Student go into school a few days a week and work the other days at home with help from Ms. Fisher. T1142-43; 855.

67.     On May 5, 2022, the Parent informed Ms. Felder, Ms. Burdick, Ms. Gackle, and Ms. Walker that the Student was "not going to Sno-Isle so that he can focus on graduating." P16p144. The record does not establish precisely when or why the Student lost interest in the Sno-Isle program. The Parent believed the Student had a conflict with a peer in the program. T522. The Parent sought information from the Sno-Isle teacher, who responded that he had told the Student he was "approaching the point of no return" with respect to the curriculum and needed to be present and on time every day. Immediately afterwards, the Student's attendance worsened. P12p44.

68.     On May 6, 2022, the Parent and the Student met with Ms. Walker, Ms. Felder, Ms. Linder, and Ms. Gackle to discuss the Student's scheduling and graduation options, which included the possibility of high school completion programs in community colleges. Ms. Linder provided the Parent and the Student with links to provide more information about these options. P16p152.

69.     On May 10, 2022, the Parent emailed Ms. Felder, Ms. Burdick, Ms. Gackle, Ms. Walker, and Ms. Stoddard because the family was "still having a lot of issues" with the Student. She said the issues had started at home "about 2 weeks ago. He did say he didn't want to attend [school] in person but was willing to do some work online . . .." P11p232.

70.     On May 10, 2022, the Parent also emailed the Student's teachers to inform them that the family was "having a lot of issues getting [the Student] to complete [the] school year." P11p92. The Parent asked each teacher to provide "the MINIMUM amount of work required to lift his grade to a D." P11p79.

71.     On May 11, 2022, Mr. Iversen responded to the Parent and also contacted the Student directly to discuss how he could catch up on his work. P11pp80, 84. Mr. Masoud, who substituted for Mr. Poe from May 2, 2022, through the end of the 2021-2022 school year, also responded with steps for the Student to take to improve his grade. P11p85; P11p91.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 16

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

72.     On May 11, 2022, the Student again met with Ms. Felder, Ms. Linder, Ms. Fisher, and Ms. Burdick. P16p153. The group discussed several options for the Student to earn his high school diploma and offered to assist with enrollment once he chose an option. The group also discussed supporting the Student in his efforts to improve his grades, including an offer by Ms. Fisher to meet with the Student after school. P16p154.

73.     The Student expressed interest in a program offered through Lake Washington Technical College, which would have allowed the Student to complete high school credits through a welding program. T546; 612-13. Ms. Linder informed the Parent how to sign up for information sessions and provided a link to do so; however, the Student did not attend the information session. P16p168; T613.

### Decision to Complete School Year Remotely

74.     During the meeting on May 11, 2022, the Student decided that he wanted to complete the school year from home. P16p155. By email the following day, Ms. Felder informed the Student's teachers of this decision. P16p155. The school team continued to provide support to the Student when he was in school and online. T656.

75.     On May 11, 2022, Dr. Baker informed the Parent of her policy to allow any student to propose a way to demonstrate "the skills of the class to replace the [s]ummatives (70%) for the course." She then described the skills that the summative assignments focused on. P11p114. On May 16, 2022, Dr. Baker agreed to the Student's request to do a voice recording on a topic. D8p2. On May 17, 2022, the Student sent Dr. Baker a draft of a "dramatic scene summary." D8p2. Dr. Baker praised the Student's work and informed him of the steps he needed to take to improve his D grade in her class. D8p1; P11p118.

76.     On May 16, 2022, the Parent told Ms. Felder and Ms. Burdick that the Student was waiting for someone to contact his teachers and provide him with a list of what assignments were required of him. P16p164. Ms. Burdick responded that day by providing a list of missing assignments. She stated that the Student could then email the teachers directly to gain information about what he needed to do. P16p167.

77.     On May 20, 2022, the District received notice from Sno-Isle that the Student was in danger of failing the second semester of the Sno-Isle program. P12p52. The District also learned the Student had been absent from the program a total of 38 days. P12pp49, 52.

78.     On or about May 23, 2022, the Student made arrangements with Ms. Walker and Ms. Fischer to attend school twice weekly. P32pp16-17. The Student worked with Ms. Fischer on May 26, 2022. P11p102. Additionally, the Student and Ms. Fischer met with Ms. Linder. They decided that the Student would focus on completing his English, social skills, and US history credits for the semester. P11p106. The Student told the Parent about this plan. P11p107. The Parent then notified Ms. Fisher, Ms. Walker, Ms. Gackle, Ms. Linder, and Ms. Burdick that the Student would not receive credit for the Sno-Isle program for the second semester because he was failing. She was concerned about whether he would have enough credits. P11p102.

79.     On or about June 2, 2022, the Parent notified Ms. Fischer that the Student had been unable to work with her because a friend was going to bring him to school and had a flat tire. Ms. Fischer reiterated her willingness to work with the Student and noted she had sent the Student an email encouraging him to come in and work with her and setting out a plan for him to complete credit recovery for a health class. P11p112. On June 3, 2022, Ms. Fischer emailed the Student to discuss helping him with his health class. P11p127.

80.     In late May or early June 2022, the Parent noticed that the Student was hanging out with a different group of friends. T1058. The Student's style of dress changed and he shaved his head. T1059. Additionally, he would stay out late, arriving home between 1:00 a.m. and 3:00 a.m. T1060.

81.     The Parent discussed the change of appearance in an email to Ms. Walker, Ms. Fisher and Ms. Linder on June 9, 2022:

> As you probably noticed, [the Student's] appearance has changed. It is because of the [f]riend group he has now. Things are somewhat better, at least he is going to school and his mood is better, but just a warning, he went back to shaving his hair off.

D10p1. After Ms. Walker responded "[w]e have not seen him at all this week," the Parent explained that she had dropped the Student off at school the past two days. D10p1.

82.     At the time, the Parent was using an application that tracked the Student's movements. P32p31; 1040. However, the Student had figured out a way to get around the application so that it looked like he was at school when he was not. T1040. Although the Parent dropped the Student off at school sometimes, the Student had his license and a truck and drove himself to school some days. T1037.

83.    On June 9, 2022, Ms. Walker sent the Parent a progress report on the Student's IEP goals. P14p12. The Student was "showing little progress toward his goals due to lack of attendance." P14p13-15.

84.    During the second semester of the 2021-2022 school year, the Student received no credit (NC) in the Sno-Isle program, an "F" in engineering and U.S. history, a satisfactory grade (S) in social skills, and an "A" in English. D22p4; D34p3; D30p2; P16p198.

## Discipline History

85.    The Student's disciplinary records contained entries for the 2019-2020 school year for "instigating, encouraging or supporting fighting behavior," for disruptive behavior, and for being under the influence of marijuana. P31pp1-2; D33pp1-2. The disciplinary records contain only one entry for the 2020-2021 school year, based on the Student's use of a confederate flag as an online profile picture in February 2021. The disciplinary records do not contain any entries for the 2021-2022 school year. *Id.* However, the Student's testimony established that he was using marijuana consistently throughout the 2021-2022 school year. T1104.

86.    At the hearing, the Student testified that on days that he did not attend school during the 2021-2022 school year, he "went to hang out with my friends who were gang members." T1105. He felt that since he already knew what he wanted to do and knew the basics for that career, there was little benefit to school. T1110.

87.    One friend had recently been in juvenile detention; some friends were drug dealers; some friends dropped out of school. T1102. The Student did not tell his Parents that his friends were gang members. T1107.

88.    The Student testified that hanging out with gang members made him feel powerful and cool, in contrast to peers at Jackson, who thought he was weird and made fun of him. T1109. The Student also testified that he had made a friend at Jackson with whom he later fell out, and that he attended parties with a different group of friends, including a friend who went to Jackson. T1106, 1118-19.

## Hospitalization

89.    On June 14, 2022, the Parent notified Ms. Walker and Ms. Gackle that the Student had been hospitalized due to suicidal threats. P14p16.

90.    On June 16, 2022, the Parent's counsel sent a letter to the District stating the Parent's intent to place the Student at a residential treatment center and to seek

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 19

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

reimbursement from the District for the costs of the private placement. P20pp1-3. The letter stated the Student doused his personal effects in gasoline and held a knife to his throat, while threatening to kill himself, prompting police intervention and leading to hospitalization. The letter further stated that before placing Student in a residential program, the family was attempting to identify a short-term placement in Washington, such as Smokey Point Behavioral Health (Smokey Point). The letter discussed that if the family was unable to find a short-term program, they might

> have no other choice but to place Student at [a residential treatment center] prior to the tenth business day by which this letter was received by the District.
>
> For the Student's part, he recognizes that he needs help and will voluntarily submit himself to [a residential treatment center].

P20p3.

91.     Around this time, the Parent identified a residential placement called Triumph Youth Services (Triumph) as a potential placement for the Student. T1005. Triumph is an approved nonpublic agency in Washington. T623.

92.     On June 17, 2022, the Student was admitted to Smokey Point. He was discharged from Smokey Point on June 27, 2022. P19pp1-2, 4. The discharge team recommended that the Student attend a multi-week outpatient program at Smokey Point. T617, 994.

### July 1, 2022 Meeting

93.     The Student's IEP team met on July 1, 2022, to discuss the Parent's intent to place the Student in a residential facility and a reevaluation of the Student. D11p1; D12p2. Meeting participants included both Parents; the Parent's counsel; Ms. Walker; Ms. Stoddard; School Psychologist Robin Arnold; Kelly Clevenger, Executive Director of Special Services; and counsel for the District.[13] D12p2.

94.     At the meeting, the Parent did not bring up Triumph or a specific residential placement. T1149. The team discussed residential placement in general but did not

---

[13] Ms. Arnold has an educational specialist degree in school psychology and a master's degree in school counseling. T732. She has educational staff associate (ESA) certification as a school psychologist in Washington, and also has national certification in school psychology. T733. She has been employed as a school psychologist since 2005. Between March 2020 and June 2023, she was a district level facilitator and director of special services. T733.

agree to that option and proposed reevaluating the Student, which would include a functional behavioral assessment (FBA) . D12pp2, 7; T1149.

95.    On July 1, 2022, the District issued a prior written notice stating in part:

> Based on team discussion on 7/1/22, there was agreement that that [the Student's] needs have changed since his last evaluation in March 2020. Most notably, he is demonstrating school refusal behaviors believed to be related to his current diagnoses of depression and anxiety The team agreed there is a need for a comprehensive reevaluation to include an FBA and coordination with [the Student's] providers at Smokey Point Behavioral Health. The reevaluation data will inform the IEP team's recommendation for program placement and development of an IEP to meet [the Student's] current needs.

D12pp2,7.

96.    During the July 1, 2022 meeting, and through Smokey Point records, the District became aware that the Student was part of a peer group involved in gang culture and dealing drugs. T783. The team proposed the FBA in order to understand the Student's behaviors because the Student had not demonstrated at school the level of aggression and safety concerns that the family was reporting at home. T757-58.

97.    There is no evidence in the record that any District staff reported that they felt threatened or concerned for their safety related to working with the Student.

98.    The Parent stated that the Student would be visiting family out of state through July 6, 2022, and discussed that the Student likely would attend an outpatient program at Smokey Point when he returned. D12p2; T749.

99.    Via email on July 9, 2022, the Parent notified Ms. Arnold that the Student was in Washington and was attending a partial hospitalization program at Smokey Point. The email stated "given [the Student's] mental health and the need to continue to stabilize him and provide him with a structured and stable environment so he can have a chance to access his academics during the upcoming school year, we see no other alternative to place him in a residential treatment center." D13p2. The Parent indicated they were still working out the details but might place him at a residential treatment center as early as the next week and "almost certainly by the following week." D13p2.

100.    With respect to reevaluating the Student, the Parent stated:

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 21

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

> We're not entirely sure [the Student] is up for being evaluated by the school district but it is a discussion we are willing to have with him if you are able to evaluate him. This is a fluid situation. If you're able to evaluate [the Student] next week on Tuesday and/or Wednesday, that could work. It's possible that later in the week could also work but we may also have to move him before the end of the week. We could have him released from Smokey [Point] that day if we needed.
>
> If you're not able to complete your evaluation during the upcoming week then we will continue to partner with you and make [the Student] available for an evaluation as soon as it is feasible to do so.

D13p2. On July 11, 2022, Ms. Clevenger replied that the District did not have staff available for the upcoming week but likely would have staff available the following month. She asked the Parent to keep the District informed on the Student's placement. D13p2.

101.    Ultimately, the Student attended only one or two days of the outpatient program at Smokey Point. T617; D14p5. He thought it "wasn't doing anything" for him. T1120. In addition, transportation to the program was difficult because the Student's vehicle used a lot of gas, which was expensive. T1120.

**Triumph Youth Services**

102.    On July 15, 2022, the Student was transported to the residential program at Triumph by a private transportation company. The Parent paid the transportation company $16,535.00. P30p2-4. The Parent believed this method of transportation was necessary because she did not believe the Student would willingly go to Triumph following his refusal to attend the Smokey Point outpatient program. T916, 1004. The Parent did not notify the District of the decision to place the Student at Triumph at this time.

103.    On July 19, 2022, the Student was admitted to Triumph. P24p1. The stress of the transition led the Student to became more dysregulated. D14p5. On July 21, 2022, the Student was admitted to Highland Ridge Hospital (Highland Ridge) due to suicidal ideation. P25p46.

104.    The Student was discharged from Highland Ridge on August 2, 2022, and returned to Triumph. P25p47-49.

105.    On August 18, 2022, the Student was threatening to kill himself and a teacher. P24p1. On August 20, 2022, the Student ran away from Triumph, was taken to the

emergency room by the police, and was admitted to Highland Ridge for a second time. P25p2.

106.    On August 20, 2022, the Student was discharged from Triumph Youth Services "due to the inability to keep himself and other[s] safe." P24p5.

107.    The Parent paid Triumph a total of $4,260. P30p14. The Student's medical insurance paid Triumph a total of $5,320, to cover mental health treatment. P30p14; T1153.

108.    The Student was not able to focus on academics at Triumph due to his mental state and the hospitalizations that occurred during his time there. T1121.

109.    On August 22, 2022, Ms. Arnold asked the Parent for an update on the Student, noting that the evaluation could be scheduled the following week if he was ready. She stated, "I hope that [the Student] is safe and making progress through his services with Smokey Point." D13p1.

110.    When the Parent replied on August 24, 2022, she did not indicate that the Student was not attending Smokey Point and did not state he had been placed in a residential facility. She stated that the Student was still struggling with his mental health and that they needed to put the evaluation on hold. D13p1.

**Provo Canyon**

111.    On August 30, 2022, the Student was discharged from Highland Ridge to a residential treatment center in Utah called Provo Canyon School. P25pp10, 14; P27p7. The Student's medical insurance covered the entire cost of the Student's placement at Provo Canyon School. T991. At hearing, when questioned by the ALJ, the Parent's counsel acknowledged that the Parent was no longer seeking reimbursement for the Student's placement at Provo Canyon School. T1033-34.

112.    By email on October 12, 2022, the Parent notified the District that the Student had been placed at Triumph and subsequently at Provo Cayon. D14p1. The Parent indicated the Student had stabilized enough to be evaluated and requested that the District evaluate the Student in Utah since there were no plans for the Student to return home at that time. D14pp1-2.

113.    Ms. Arnold replied to the Parent's email on October 18, 2022, stating that the District had not been notified that the Student was attending a residential program. Ms. Arnold requested a release of information to obtain information about these programs so that they could evaluate the Parent's request. D14p1.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 23

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

114.   On October 24, 2022, the Parent provided Ms. Arnold with information regarding the residential programs the Student had attended. D14p5.

115.   On November 3, 2022, the Parent notified the District that the Student would be transitioning to another residential program – Spark Academy. P29p212.

### Spark Academy

116.   On November 7, 2022, the Student was admitted to Spark Academy, which is part of the Heritage Community. D37p6; P29p12; T472. 489. Spark Academy serves students who have neurological differences; many have autism. T474-75. 490, 569.

117.   At the time of the hearing, Spark Academy was an approved non-public agency in Washington. T602.

118.   Approximately 60 students, ages 13 to 18, are enrolled at Spark Academy. T490. Each student lives in a home on campus, also referred to as the "milieu," with 10 to 12 other students. T477. Spark Academy has a 4:1 ratio of students to staff. T171, 227-28. The school day at Spark Academy starts at 8:45 a.m. and ends at 2:50 p.m., with lunch from 12:00 p.m. to 12:40 p.m. P29p113; T568. Students attend five sixty-five minute class periods in a school day. T583.

119.   Spark Academy employs certificated special education teachers and many students have IEPs. T504, 589. When a parent places a student at Spark Academy, the parent often provides the student's IEP. T603. There is no evidence in the record that the Parent provided Spark Academy with the Student's IEP or notified Spark Academy that the Student had an IEP developed by the District. Nor is there evidence that Spark Academy developed an IEP for the Student while he attended Spark Academy. T589.

120.   David Moss, the Student's primary therapist at Spark Academy, provided the Student with one hour of individual therapy and one hour of family therapy per week.[14] P35p1; T211. The Student also received two hours of group therapy per week. P35p2; T167, 212. Mr. Moss believed the residential program at Spark Academy provided a unique opportunity for the Student to be with other students who had similar disabilities within a home setting. T226.

---

[14] Mr. Moss has a master's degree in marriage and family therapy and a certificate in addictions counseling. P35p8. He worked for Spark Academy from September 2022 through September 2023. P35p8.

121.    During his time at Heritage, the Student continued to engage in school refusal. T173, 1113. When the Student refused to attend class, Mr. Moss or Matty Bryant, the academic director at Spark Academy, would visit him to provide encouragement and motivation to engage academically.[15] T173-74, 571-72; P37p1. The Student was never forced to attend class when he did not want to go. T571-72, 574. It is unclear how often the Student refused to attended class because Spark Academy does not take attendance. T593. At the hearing, Mr. Bryant explained that the Student's attendance ebbed and flowed:

> Some weeks he would be there. Some weeks he wouldn't. Some weeks he would be there for part of the week. Sometimes it was just the first couple periods and then he would come in the school in the afternoon . . .

T592.

122.    As of February 14, 2023, the Student was struggling to do well in class at Heritage Spark and "[t]hough we are working to support him he is not currently making the efforts needed toward graduation." D20p1.

123.    When the Student became dysregulated at Spark Academy, he would try to hurt himself and/or others. T216. The Student's records from his time at Spark Academy include multiple reports between November 2022, and May 2023, documenting the Student's elopement from campus, threats to kill himself and others, threats to harm himself or others, physical aggression, actual harm to himself and others, property destruction, disruptive and unsafe behavior, and the need for safety holds to prevent harm to the Student and others. D37pp 53–84; D38pp8-9.

124.    While the Student was at Spark Academy, staff from the District and Spark Academy worked together to discuss the Student's credits and what he needed to graduate in order to help him meet graduation requirements. T598, 759-60.

### Evaluation by Dr. Cluff

125.    On November 23, 2022, Dr. Joshua Cluff[16] conducted an independent educational evaluation (IEE) of the Student. D16p2.

---

[15] Mr. Bryant has master's degrees in teaching and educational administration. He has been the academic director at Spark Academy since 2018. P37p6.

[16] Dr. Cluff has a PsyD in Clinical Psychology and is a licensed psychologist. He has been the owner of Clearview Psychological Services since 2009. He provides psychological assessments, consultation, and

126.    Dr. Cluff interviewed the Student at Spark Academy. D16p3. He administered twenty-six assessments, reviewed treatment records, conducted a mental status exam, and interviewed Mr. Moss, Ms. Dean from Provo Canyon, the Parents, and Mary Warren, the Student's educational consultant. D16pp2-3.

127.    Dr. Cluff's report discussed the reasons for the Student's referral, including the Student's involvement with gangs around June 2023, increasing anger and hatred (hate speech), worsening depression and social anxiety, cannabis use, issues related to peer relationships and to his relationship with his Parents, and self-harm resulting in his admission to the hospital for suicidal ideation. D16pp3-5. The Student stated he was pushed out of his circle of friends, "went into a blackout rage," and ended up being hospitalized. D16p3. The Student discussed becoming increasingly angry at his Parents, noting that he did not want to meet their expectations, "'and was set that I was going to live a certain lifestyle they didn't like;' specifically a gang lifestyle." D16p3. The Student indicated to Dr. Cluff that at the time he was overly-focused on not finishing school and instead, having a life that was about fun and freedom. D16p4.

128.    Although Dr. Cluff testified at the hearing that he reviewed the Student's IEP and BIP from 2021, and his IEP from 2022, the brief discussion of the Student's academic history in the report focused largely on his elementary and middle school years and did not discuss academics in the high school setting. D16p12. Additionally, Dr. Cluff was not familiar with the District's Achieve program or the Sno-Isle program. T303-04.

129.    Dr. Cluff's report discussed that the Student felt alone after he broke with his friend group in tenth grade. In eleventh and twelfth grade, he made friends which improved his depression. D16p13. The Student reported experiencing suicidal ideation in ninth and tenth grades, but stated to Dr. Cluff that he had not experienced it since he made friends in eleventh grade. D16p13.

130.    Dr. Cluff diagnosed the Student with:

- Cannabis Use Disorder, Severe, in remission, in a controlled environment
- Autism Spectrum Disorder, Level 1, requiring Support, otherwise referred to as Non-Verbal Learning Disorder
- Major Depressive Disorder, Recurrent, Moderate, without Full Episodic Recovery, Superimposed on Persistent Depressive Disorder, Early Onset

---

treatment plan design, with a focus on adolescents in wilderness therapy and residential treatment programs. P36pp1,2, 9. Dr. Cluff "rarely" evaluates students in a public school setting. T296.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 26

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

Some Emerging Antisocial Personality Traits Noted
- Social Anxiety Disorder (Social Phobia), Early Onset, with poor insight
- Attention-Deficit/Hyperactivity Disorder, Combined Presentation
- Other Developmental Disorder of Scholastic Skills, associated with deficit processing speed, poor gestalt, and problems with memory
- Specific Learning Disorder, with impairment in Mathematics, specifically math fluency and computation.

D16p38.

131.    Dr. Cluff's report made numerous recommendations. With respect to placement, he recommended a residential treatment program with 24/7 therapeutic support. D16p39. With respect to the academic environment, he recommended a small classroom with as little stimulation as possible, accommodations to allow breaks to reduce stimulation or when overloaded, and a teacher/aide to student ratio that ensured a high degree of accommodation and that his programming was tailored to his learning style. D16p39-40.

132.    The Parent paid $7,200 to Dr. Cluff for the evaluation. P30p9.

133.    The District received Dr. Cluff's evaluation on January 16, 2023. D18p5.

134.    On February 13, 2023, the District held a meeting to discuss Dr. Cluff's evaluation of the Student and the District's plan to reevaluate the Student. D17pp1-3.

### April 2023 Reevaluation

135.    The Parent provided consent for the reevaluation on February 15, 2023. D19p1.

136.    Virginia Alonzo,[17] a District school psychologist, conducted the April 2023 reevaluation and prepared a very detailed and comprehensive draft reevaluation report. D26. Ms. Alonzo reviewed the Student's medical records and history, and developmental, special education, and school history, attendance and discipline records, state testing scores, and grades. D26pp1-8.

137.    The reevaluation team determined that the Student remained eligible for special education services under the emotional/behavioral disability category.

---

[17] Ms. Alonzo has a master's degree and is credentialed in the state of Washington and nationally as a school psychologist. She has worked for the District as a school psychologist for approximately 12 years. T789-91.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 27

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

D26p54. The team recommended SDI in math and social/behavioral/emotional, counseling as a related service, and review and revision of the Student's FBA and BIP. D26pp54-56. The team also recommended consultation from a speech language pathologist and occupational therapist or physical therapist as appropriate to assist the staff in developing appropriate accommodations for communication and sensory motor skills, respectively. In addition, the team recommended support from shared paraeducators with consideration of 1:1 support. *Id.*; D26pp60-63.

138.    As of April 19, 2023, the Student was still engaging in school refusal at Spark Academy. D38p4.

### May 2023 IEP

139.    On May 11, 2023, the Student's IEP team met and developed a new IEP for the Student. The IEP provided 600 minutes per week of SDI in behavior/social skills and 300 minutes per week of SDI in Math, with all minutes being provided by a special education teacher in the special education setting. D28p14. It also provided 60 minutes per week of counseling by a mental health counselor as a related service. D28p14. The IEP included placement in the Achieve Program, and provided that the Student would spend between 0 and 39 % of his time in the general education setting. D28pp15, 20.

140.    District members of the IEP team believed that the smaller classes and flexibility of the Achieve program were consistent with Dr. Cluff's recommendations. T784-85.

141.    On May 17, 2023, the District issued a prior written notice proposing to initiate the IEP with placement in the Achieve program two periods per day with access to general education with support from a paraeducator as needed for the remainder of the school day. D28p20. Alternatively, the District proposed allowing the Student to access his SDI and the academic instruction he needed to complete courses required for graduation through 1:1 tutoring from a certificated special education teacher. Both options provided counseling as a related service to support the Student's progress and transition back to the District. D28p20.

142.    Based on team discussion and Parent input, the team determined that 1:1 instruction from a District special education teacher would be more appropriate for the Student to receive his SDI and to support him in completing graduation requirements. The team also agreed to provide counseling services through an outside mental health counselor. D28p21. District members of the team believed the Student's needs could be served through the services offered, which reflected his least restrictive

environment (LRE), and therefore declined to place the Student in a residential treatment center. D28p21.

143.    The Parent declined the District's offer to provide services for the Student and stated that the Student would not return to the District. D28p21; T970. The Parent also declined an offer to provide summer services to the Student related to his transition goals. P29p147.

144.    As of May 18, 2023, the Student was receiving the following grades at Spark Academy: college and career awareness – D; government – A; English – C+; Spanish – C. P29p113.

145.    In early June, the Student was discharged from Spark Academy and returned home. T1092. The Parent paid a total of $119,900 to Spark Academy. P30p7.

146.    Ultimately, the Parent, Mr. Moss, and the Student believed he made academic, emotional, social, and behavioral progress at Spark Academy, although that progress was "up and down" during his time there. P35p3-4; P38pp17-18; T217, 920, 963, 1113-14.

147.    On June 8, 2023, the District issued a prior written notice proposing to exit the Student from special education services because he was eligible for graduation, had declared his intent to graduate, and the Parent had refused the District's offer to deliver services to assist the Student in meeting transition goals after he returned to residing in the District. D6pp1,5.

148.    The Student graduated from Everett High School at the end of the 2022-2023 school year and received a diploma. T969.

<u>CONCLUSIONS OF LAW</u>

### Jurisdiction and Burden of Proof

1.    The Office of Administrative Hearings (OAH) has jurisdiction over the parties and subject matter of this action for the Superintendent of Public Instruction as authorized by 20 United States Code (USC) §1400 *et seq.*, the Individuals with Disabilities Education Act (IDEA), Chapter 28A.155 Revised Code of Washington (RCW), Chapter 34.05 RCW, Chapter 34.12 RCW, and the regulations promulgated under these provisions, including 34 Code of Federal Regulations (CFR) Part 300, and Chapter 392-172A Washington Administrative Code (WAC).

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 29

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

2.      At the time this matter was heard, the burden of proof was on the party seeking relief.[18] *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). The Parent is seeking relief and bears the burden of proof in this case. The U.S. Supreme Court and Washington courts have generally held that the standard of proof in an administrative proceeding is a preponderance of the evidence. *Steadman v. SEC*, 450 U.S. 91, 102 (1981); *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 797 (1999); *Hardee v. Dep't of Social & Health Services*, 172 Wn.2d 1, 4 (2011). Therefore, the standard of proof in this matter is preponderance of the evidence.

**The IDEA and FAPE**

3.      Under the IDEA, a school district must provide a free and appropriate public education (FAPE) to all eligible children. In doing so, a school district is not required to provide a "potential-maximizing" education, but rather a "basic floor of opportunity." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 197 n.21, 200-201 (1982).

4.      In *Rowley*, the U.S. Supreme Court established both a procedural and a substantive test to evaluate a state's compliance with the IDEA. The first question is whether the state has complied with the procedures set forth in the IDEA. The second question is whether the individualized education program developed under these procedures is reasonably calculated to enable the child to receive educational benefits. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Rowley*, 458 U.S. at 206-07.

5.      Procedural safeguards are essential under the IDEA, particularly those that protect the parent's right to be involved in the development of their child's educational plan. *Amanda J. v. Clark County Sch. Dist*., 267 F.3d 877, 882 (9th Cir. 2001). Procedural violations of the IDEA amount to a denial of FAPE and warrant a remedy only if they:

> (I) impeded the child's right to a free appropriate public education;
>
> (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child; or

---

[18] The Washington legislature recently enacted RCW 28A.155.260, which took effect on June 6, 2023, and places the burden of proof on school districts in due process hearings. The hearing in this matter was completed before RCW 28A.155. 260 took effect, and both parties conducted the hearing with the understanding that the Parent bore the burden of proof. Moreover, the Parent's post-hearing brief acknowledges that she bears the burden of proof in this matter.

(III) caused a deprivation of educational benefits.

20 USC §1415(f)(3)(E)(ii); WAC 392-172A-05105(2); 34 CFR §300.513(a)(2).

6.      "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 999, 197 L. Ed. 2d 335 (2017). The determination as to whether an IEP is reasonably calculated to offer a student FAPE is a fact-specific inquiry. As the U.S. Supreme Court has made clear, "[a] focus on the particular child is at the core of the IDEA," and an IEP must meet a child's unique needs. *Id.* The "essential function of an IEP is to set out a plan for pursuing academic and functional advancement." *Id.* Accordingly, an IEP team is charged with developing a comprehensive plan that is "tailored to the unique needs of a particular child." *Id.* at 1000. Additionally, the Student's "educational program must be appropriately ambitious in light of his circumstances . . . ." *Id.*

7.      In reviewing an IEP, "the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.* at 999 (emphasis in original). The determination of reasonableness is made as of the time the IEP was developed. *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). An IEP is "a snapshot, not a retrospective." *Id.*

**Issue 1a: Whether the District violated the IDEA and denied the Student a FAPE from June 26, 2021 through July 1, 2022, by failing to implement the Student's March 2021 IEP and March 2022 IEP by failing to deliver the Student's SDI as written in light of his excessive disability-related absences and inability to access his FAPE.**

8.      The Parent contends that the District failed to provide the Student with the SDI in his March 2021 and March 2022 IEPs. In essence, the Parent's claim is that the Student missed school due to disability-related absences, and the District's failure to address these absences resulted in the Student missing school and, therefore, his SDI.

9.      The District contends that the Student had limited absences during the first semester of the 2021-2022 school year and emphasizes that he received his SDI and achieved good grades. The District acknowledges that the District was unable to deliver all of the SDI in the Student's IEP during the second semester of the 2021-2022 school year due to the Student's absences, but contends that these absences stemmed from the Student's choice to skip school to hang out with friends. The District contends that it was working to address the Student's absences and to help the Student to reach his stated goal of graduating from high school. Finally, the District argues that it proposed a reevaluation and FBA as soon as the Parent raised concerns that the Student might require a more restrictive placement in order to access his education.

10.     A school district's obligation to provide the special education and related services provided in a student's IEP does not require "perfect adherence to the IEP . . .." *Van Dyun v. Baker Sch. Dist*. 5J, 481 F.3d 770, 779 (9th Cir. 2007). Failure to implement an IEP constitutes a denial of FAPE only "when the services provided to a disabled child fall significantly short of those required by the IEP," so as to constitute a material failure. *Id.* at 773.

11.     The first question is whether the District failed to implement the March 2021 IEP, which was in place until March 2022. The timeframe for this claim starts on June 26, 2021. However, there is no evidence in the record to establish whether the Student was or was not receiving the SDI in his March 2021 IEP from June 26, 2021 through the start of the 2021-2022 school year. Accordingly, the Parent has not met her burden with respect to this time period.

12.     Further, the evidence does not establish a material failure to implement the March 2021 IEP by failing to provide the Student's SDI during the first semester of the 2021-2022 school year. Although the Parent asserts that the Student had a significant number of absences during this timeframe that prevented him from receiving his SDI, the record does not support this claim.

13.     In September 2021, the Student was excited to be accepted into the Sno Isle program and the Parent did not have concerns about attendance and school refusal at that point. Between September and December 2022, the Student did not miss a significant amount of school, and the majority of absences were due to illness/quarantine or Parent contact. The record does not indicate why the Parent contacted the school to excuse the Student's absences on these dates and the evidence does not demonstrate that the Student was missing school because he was anxious about attending.

14.     Although the Student's absences increased in January 2022, the increase stemmed from the Student's choice to obtain a job that required him to leave school early and from his refusal to attend engineering class after the January 14 incident. After the Student started missing his sixth period social skills class and SDI, the District immediately held an IEP team meeting to address this issue. The team sought to support the Student in his job because it was important and interesting to him, and therefore offered the Student the opportunity to work with a dedicated staff member for thirty minutes each morning. Ms. Walker also took prompt action to attempt to get the Student to attend his engineering class after the January 14 incident, albeit unsuccessfully. She spoke with the Student and the Parent, apologized to both of them based on the Student's belief that she had spoken about the incident in front of others, and met with Ms. Gackle and Ms. Fisher to discuss how to motivate him to attend.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 32

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

15.     Moreover, the Parent has not shown that the District failed to provide the Student with the SDI in his IEP on the days that he was in attendance. The March 2021 IEP provided that the Student would receive 275 minutes weekly of SDI in math and SDI in behavior/social skills, with all SDI delivered in the special education setting. After the Student's acceptance into the Sno-Isle program, his schedule was adjusted so that his SDI was embedded into his engineering class and also provided in his social skills class. The evidence establishes that the Student was receiving SDI during his social skills class. It also establishes that a paraeducator assisted the Student in his engineering class, although there is no evidence in the record regarding the nature of the assistance. The Parent has not met her burden to show the Student was not receiving his SDI when he attended school.

16.     Further, the Student's grades are consistent with the conclusion that any deviation from the Student's IEP was not material. The Student achieved a grade of A in his engineering, social skills, and Sno-Isle classes, along with grades of A- and B in English and U.S. history, respectively.

17.     The Parent bears the burden of proving this claim and has not shown a material shortfall in the amount of SDI delivered on the days the Student attended school during the first semester of the 2021-2022 school year. Nor has she shown that the Student's absences during this time period were significant enough to establish a material failure to implement the IEP. Finally, the District made efforts to support the Student and to encourage his attendance at school in order to be able to provide his SDI and to help him meet graduation goals.

18.     Therefore, the Parent has not met her burden to establish a material failure to implement the Student's IEP based on a failure to provide the Student with the SDI in his IEP between September 2021 and January 2022.

19.     The next question is whether the District failed to implement the Student's IEP during the second semester of the 2021-2022 school year. In February, the Student continued to refuse to attend engineering, despite efforts by the District to encourage him to attend. However, the majority of absences that month were due to travel or contact from the Parent. The District does not dispute that the Student's absences increased significantly in March 2022 and that the Student continued to miss significant amounts of school through the end of the 2021-2022 school year. Although the District was willing and able to implement the Student's IEP each school day, it was unable to do so on the days that the Student refused to attend school.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 33

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

20.    A decision by the Eleventh Circuit Court of Appeals in *L.J. v. Sch. Bd*., 927 F.3d 1203 (11th Cir. 2019) is helpful in analyzing this claim. In *L.J.*, the student missed services provided by his stay-put IEP due, in part, to his refusal to attend school. *Id*. at 1217. The court noted that when "a child's school refusal is attributable to the school's own failures to implement an IEP, the school cannot rely on that refusal as a hall pass to escape responsibility or as a license to give up." *Id*. at 1219. In *L.J.,* however, the record demonstrated that the Student's missed instruction was due to spotty attendance rather than a failure on the part of the school. The court emphasized that "missing those sessions because he was not at school is quite a different matter than missing those sessions because the school simply failed to provide them." *Id*. at 1218. In addition, the school district offered a wide range of supports in an effort to address the Student's absenteeism. *Id.*

21.    Here, as in *L.J.*, the District cannot be faulted for the Student's absences. *Id*. at 1219. The record does not support a conclusion that the Student's school avoidance stemmed from a failure on the part of the District. Rather, a preponderance of the evidence indicates that the Student skipped school because he preferred to hang out with friends and thought that since he already knew what he wanted to do and knew the basics for that career, there was little benefit to school. This is consistent with evidence that even after the Student left the District, his school refusal continued throughout most of his time at Spark Academy.

22.    Additionally, the record demonstrates that multiple District staff, particularly Ms. Walker, Ms. Gackle, Ms. Fisher, and Dr. Baker, made efforts to support the Student and to encourage him to attend school throughout the 2021-2022 school year. These efforts were ongoing and multi-faceted. At the beginning of the school year, the team changed the Student's schedule to support his participation in the Sno-Isle program, which he was excited about. Throughout the school year, Dr. Baker frequently communicated with Ms. Walker and the Parent about how the Student was doing in order to keep him on track to graduate. Dr. Baker made efforts to get to know the Student and his interests in order to support him in completing his work. Because the Student was more willing to attend her class, she also worked to encourage him to attend other classes. All of the Student's teachers were responsive to the Parent's requests to help the Student complete missing work. At the March 2022 IEP team meeting, the team developed a plan to address the Student's refusal to attend fourth period. As the Student's attendance continued to decline, Ms. Felder, Ms. Linder, and Ms. Burdick met with the Student and the Parent several times to discuss plans to help the Student stay on track for graduation. They also told the Student of other options to meet graduation requirements, such as Lake Washington, that he might be more interested in, and therefore might be more willing to attend. Ms. Stoddard was also involved in efforts to find things to motivate the Student so that he would attend.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 34

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

Finally, the District agreed to the Parent's plan for the Student to work remotely, with continued support from Ms. Fisher and Ms. Walker. Although the Parent now questions the wisdom of this plan, it was reasonable given that the Student had done well working remotely during the COVID shut down.

23.    After considering the facts and circumstances of this case, it is concluded that the Parent has not met her burden to demonstrate a material failure to implement the Student's March 2021 IEP or March 2022 IEP.

**Issue 1b: Whether the District violated the IDEA and denied the Student a FAPE by failing to develop programming reasonably calculated to mitigate the Student's excessive disability-related absences between June 26, 2021 and July 1, 2022, when the Parent unilaterally placed the Student in an out-of-state therapeutic program pursuant to reimbursement notice.**

24.    The only IEP developed during the timeframe at issue in this case is the March 2022 IEP. As discussed above, the question is whether the IEP was reasonable at the time it was developed. *Adams v. Oregon*, 195 F.3d at 1149.

25.    In drafting the March 2022 IEP, the IEP team considered the Student's present levels of performance and noted that the Student was successfully working in the Sno-Isle program. To the extent that the Parent now contends the Student was struggling to attend Sno-Isle as early as October 2021, I give more weight to the notation in the IEP, which was made at the time of the events in question.

26.    The team also developed annual goals in social/emotional and math. No one raised concerns that these goals were not appropriate or that the Student required additional goals. Similarly, no one raised concerns about the multiple accommodations or the SDI the IEP provided. Further, there is no evidence that the Student required different or additional goals, accommodations, or SDI.

27.    When the IEP was developed, the Student was refusing to attend his fourth period class. The team discussed the Student's anxiety around attending that class and that he was worried about his peers' perception of him because he was so far behind in his work. Given what the team knew at the time, it was reasonable to address this issue by developing a plan to help the Student catch up with his work in the hope that he would then return to class.

28.    The Parent now contends that the team should have changed the Student's BIP to address truancy, and could have provided therapeutic services to the Student, training to the Parents, SDI that targeted the Student's absences, transportation services, home check-ins by District staff, or a school refusal specialist. However, as

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 35

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

discussed above, when the IEP team met in March 2022, the Student's attendance was at the start of its significant decline. Given what the IEP team knew at the time, the IEP team's plan to address attendance issues was reasonable. No one mentioned the need for a more comprehensive plan at that time.

29.     The Parent also contends that the Student was not performing well during the first semester of the 2021-2022 school year, and that the District should have convened an IEP team meeting to determine how to support him with his challenges in attending school and completing assignments. However, the record makes clear that all of the Student's teachers at Jackson worked with the Student to ensure he knew what he needed to do to complete assignments. With this support, the Student successfully achieved high marks in all of his first semester classes. Moreover, when the Parent participated in the March 2022 IEP meeting, she raised no concerns about the Student's grades or the need for additional support.

30.     Relatedly, the Parent contends that the District failed to address the underlying causes of the Student's frequent refusal to attend school, and instead used a "band-aid approach" in an effort to pass the Student. The Parent's argument is largely premised on the claim that the District applied lower standards to the Student and significantly decreased his coursework in order to allow him to pass. While the Parent now contends that the District was merely lowering academic standards rather than assisting the Student, the record does not support this claim. First, the record demonstrates that opportunities to make up missing assignments were available to all students in engineering, U.S. history, and English. Second, the Parent did not question the support teachers provided to the Student at the time it was given. Third, the Student's IEP included multiple accommodations and modifications and nothing in the record suggests that teachers provided support or graded the Student in a manner that was inconsistent with these provisions. Finally, as discussed above, the District made significant efforts to address the Student's school refusal, wholly apart from efforts to assist him with his grades.

31.     The Parent's final argument is that the District should have revised the Student's IEP during the July 2022 IEP team meeting, in addition to agreeing to reevaluate him. It is clear from the record, however, that the team sought to reevaluate the Student in order to inform the IEP team's placement decision and development of an appropriate IEP. The Parent has not shown that the IEP should have been revised before the reevaluation was conducted.

32.     The March 2022 IEP was reasonably calculated to enable the Student to make progress in light of his circumstances and to mitigate the Student's absences at the

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 36

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

time it was developed. Moreover, the Parent has not shown that the District denied the Student a FAPE by failing to amend the Student's IEP in July 2022.

33. The Parent has not met her burden to prove this claim.

**Issue 1c: Whether the District violated the IDEA and denied the Student a FAPE by failing to draft IEPs reasonably calculated to offer the Student programming and placement in an appropriately therapeutic setting between June 26, 2021 and July 1, 2022, when the Parent unilaterally placed the Student in an out-of-state therapeutic program pursuant to reimbursement notice.**

34. School districts must ensure that special education students are served in the "least restrictive environment." WAC 392-172A-02050. This means students should be served "(1) to the maximum extent appropriate in the general education environment with students who are nondisabled; and (2) special classes, separate schooling or other removal of students eligible for special education from the general educational environment occurs only if the nature or severity of the disability is such that education in general education classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id*.

35. The Ninth Circuit has developed a four-part test to determine whether a student's placement represents the least restrictive environment, as first set out in *Sacramento City Unified Sch. Dist. v. Rachel H*., 14 F.3d 1398, 1404 (9th Cir. 1994).

> We consider: (1) the academic benefits of placement in a mainstream setting, with any supplementary aides and services that might be appropriate; (2) the non-academic benefits of mainstream placement, such as language and behavior models provided by non-disabled students; (3) the negative effects the student's presence may have on the teacher and other students; and (4) the cost of educating the student in a mainstream environment.

*Ms. S. ex rel. G v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1137 (9th Cir. 2003) (Internal quotation marks omitted; citations omitted). "While every effort is to be made to place a student in the least restrictive environment, it must be the least restrictive environment which also meets the child's IEP goals." *City of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir. 1996).

36. School districts must "ensure that a continuum of alternative placements is available to meet the special education and related services needs of students." WAC 392-172A-02055(1). This may include "placement in a public or private residential program in the event such a program is necessary to provide special education and

related service to a child with a disability." 34 C.F.R. § 300.104.; *M.S. v. L.A. Unified Sch. Dist.*, 913 F.3d 1119, 1136 (9th Cir. 2019). If a residential placement "is a response to medical, social, or emotional problems . . . quite apart from the learning process," then it is not necessary under the IDEA. *Clovis Unified Sch. Dist. v. Calif. Office of Admin. Hearings*, 903 F.2d 635, 643 (9th Cir. 1990).

37.    There is no question that when the Student's IEP team met in March 2022, the Student did not require residential placement. There is no evidence that anyone, including the Parent, believed that the Student required a residential placement at that time. Nor is there evidence in the record indicating that the Student required such a restrictive placement. *Rachel H.*, 14 F.3d at 1404.

38.    The Parent further contends that by July 1, 2022, the Student required a residential placement in order to receive FAPE. It is clear that the Student's needs changed significantly between the IEP meetings on March 15, 2022, and July 1, 2022. When the IEP team met in July, however, it had no evaluative data to guide it in determining an appropriate placement for the Student. Thus, the IEP team reasonably determined that it was necessary to conduct a comprehensive reevaluation of the Student, with an FBA and input from providers at Smokey Point.

39.    Moreover, application of the *Rachel H.* factors does not support residential placement as of July 1, 2022. Although the Student was engaging in school refusal, he obtained both academic and non-academic benefits when he did attend. A general education setting was important for working toward his IEP goal to engage in conversation with classmates. Although the Student testified about difficulties with peers, his testimony and the information he provided to Dr. Cluff indicates that he also had some beneficial peer relationships along with a good relationship with Ms. Fisher. There is no evidence that the Student's presence had any negative impact on teachers or other students. Finally, the cost of educating the Student in a residential setting clearly exceeds the cost of educating the Student in the District.

40.    It is also significant that Smokey Point recommended an outpatient program for the Student, rather than a round-the-clock residential setting. At the July 1 IEP meeting, the Parent discussed that placement in the Smokey Point outpatient program seemed likely.

41.    In conclusion, the Parent has not met her burden to prove that a residential placement was the Student's least restrictive environment at any point between June 26, 2021 and July 1, 2022, or that he required a residential placement in order to receive a FAPE.

**Issue 2: Whether the Student's unilateral placement by the Parent at each of the following out-of-state residential treatment centers was appropriate and reasonably calculated to meet the Student's needs: a. Triumph Youth Academy (July 2022 through August 2022); b. Provo Canyon (August 2022 through September 2022); and c. Heritage SPARK (September 2022 through the present).**

42.    Parents who unilaterally enroll a student in a private school are entitled to reimbursement only if: (1) the district placement violated the IDEA; and (2) the Parents' private school placement is "proper" under the IDEA. *Florence County Sch. Dist. v. Carter,* 510 U.S. 7, 15, 114 S. Ct. 361 (1993).

43.    In this case, the Parent has not demonstrated that the District violated the IDEA. Accordingly, the Parent has not met the first prong of the reimbursement test. Therefore, it is not necessary to address whether any of the Student's residential placements were proper.

<u>ORDER</u>

The Parent has not established that the District denied the Student a free appropriate public education and, therefore, is not entitled to a remedy.

SERVED on the date of mailing.

_____
Pamela Meotti
Administrative Law Judge
Office of Administrative Hearings

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 39

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

## Right To Bring A Civil Action Under The IDEA

Pursuant to 20 U.S.C. 1415(i)(2), any party aggrieved by this final decision may appeal by filing a civil action in a state superior court or federal district court of the United States. The civil action must be brought within ninety days after the ALJ has mailed the final decision to the parties. The civil action must be filed and served upon all parties of record in the manner prescribed by the applicable local state or federal rules of civil procedure. A copy of the civil action must be provided to OSPI, Legal Services, PO Box 47200, Olympia, WA 98504-7200. To request the administrative record, contact OSPI at appeals@k12.wa.us.

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 40

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the State of Washington that true copies of this document were served upon the following as indicated:

Parent/Adult Student                         via E-mail
16018 32nd Ave SE                            kim_caschette@yahoo.com
Mill Creek, WA  98012                        dcaschette@gmail.com

Luke Hackenberg                              via E-mail
Ryan Ford                                    luke@cedarlawpllc.com
Cedar Law PLLC                               ryan@cedarlawpllc.com
113 Cherry Street                            emma@cedarlawpllc.com
PMB 96563
Seattle, WA  98104

Kelley Clevenger                             via E-mail
Executive Director of Special Services       kclevenger@everettsd.org
Everett School District
PO Box 2098
Everett, WA  98201

Susan Winkelman                              via E-mail
Pacifica Law Group LLP                       susan.winkelman@pacificalawgroup.com
1191 Second Avenue, Suite 2000               grace.mcdonough@pacificalawgroup.com
Seattle, WA  98101

Dated August 13, 2024, at Olympia, Washington.

*Lan Le*

_____
Representative
Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489

cc:     Administrative Resource Services, OSPI

Findings of Fact, Conclusions of Law, and Final Order
Cause No.  2023-SE-0107
Docket No. 06-2023-OSPI-01930
8612 - OSPI
Page 41

Office of Administrative Hearings
P.O. Box 42489
Olympia, WA  98504-2489
(800) 845-8830
(206) 587-5135